```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/26/12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MALIK INGRAM,

                      Petitioner,         12 CIV 7243 (RPP)
                                       08 CR 379 (RPP)

      -against-                  **OPINION & ORDER**

UNITED STATES OF AMERICA,

                      Respondent.
-----------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

        Pursuant to 28 U.S.C. § 2255, Malik Ingram ("Ingram") brings a Motion to Vacate, Set Aside, or Correct the sentence imposed on April 7, 2009 after he pleaded guilty to participating in a conspiracy to distribute, and to possess with intent to distribute, at least fifty grams of crack cocaine, in violation of 21 U.S.C. §§ 812, 841, 846. See United States v. Ingram, No. 08 CR 379 (S.D.N.Y. Apr. 7, 2009). In his motion, Ingram principally challenges the disparity between the sentence that he received and the one his co-defendant, Raymond Dacosta ("Dacosta"), received. (See Mot. to Vacate, Set Aside, or Correct Sentence ("§ 2255 Mot."), No. 12 CIV 7243, ECF No. 1.) Ingram contends that this disparity stems from the fact that his sentencing hearing occurred before Congress enacted the Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010) (amending 21 U.S.C. § 841) ("FSA"), while Dacosta's sentencing hearing occurred after the statute's enactment.[1] (See § 2255 Mot. at 4-5.) On this basis, Ingram argues that he is entitled to relief because his attorney provided ineffective assistance by failing to request that the Court adjourn his sentencing hearing so that he could have "the benefit of" FSA

---

[1] Congress enacted the FSA to reduce the large disparity in prison sentences between defendants convicted of trafficking powder cocaine versus crack cocaine. As is relevant here, the FSA increased the drug amounts triggering mandatory minimums for crack cocaine trafficking from fifty grams to 280 grams in respect to the ten-year minimum sentence. See 21 U.S.C. § 841.

1

and by also failing to appeal his sentence so as to preserve his rights under the FSA. (Id. at 5.) Alternatively, Ingram argues that his "sentence became illegal after the FSA and Dorsey, as it created a disparity between [his] and his co-defendant's . . . [sentence] in violation of 18 U.S.C. § 3553." (Id. at 6.) For the reasons stated below, Ingram's § 2255 Motion is DENIED.

## I. FACTUAL BACKGROUND

### A. Criminal Proceedings

On July 28, 2008, the Government filed an indictment charging Ingram and Dacosta with one count of conspiracy to distribute, and to possess with intent to distribute, at least fifty grams of crack cocaine in violation of 21 U.S.C. §§ 812, 841, 846. (Superseding Indictment (the "Indictment") at 1-2, July 28, 2008, 08 CR 379, ECF No. 24.) A second count of the Indictment charged Dacosta and numerous other co-defendants, but not Ingram, with conspiracy to distribute, and to possess with intent to distribute, at least 1,000 kilograms of substances containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 812, 841, 846.[2] (Id. at 2-4.) Pursuant to a plea agreement, Ingram pleaded guilty to Count One on December 1, 2008. (See Change of Plea Hr'g Tr. ("Plea Hr'g"), Dec. 1, 2008.) Dacosta pleaded guilty to Counts One and Two on December 12, 2008.

### B. Sentencing Hearings

Ingram's sentencing hearing took place on April 7, 2009. At the hearing, Ingram was principally sentenced to the mandatory minimum term of 120 months' imprisonment. (Final J. at 1, Apr. 7, 2009, ECF No. 126.)

Dacosta's sentencing hearing was originally scheduled to take place on March 16, 2009, but parties requested that the hearing be adjourned so that a Fatico hearing concerning Dacosta's

---

[2] The third count of the Indictment did not apply to Ingram or Dacosta, but charged additional other co-defendants with conspiracy to distribute, and to possess with intent to distribute, at least five kilograms of substances containing a detectable amount of cocaine and at least 100 kilograms of mixtures and substances containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 812, 841, 846. (Indictment at 5.)

role in the offense could be held. (See Letters from Counsel Requesting Adjournment, ECF Nos. 107, 121, 130, 143, 151.) The Fatico hearing took place on August 27, 2009. By an Order dated May 18, 2010, this Court ruled on the hearing and set sentencing for July 14, 2010. (Op. & Order at 1, May 18, 2010, ECF No. 180.) On July 8, 2010, however, defense counsel requested a ninety-day adjournment in light of the fact that the Senate had passed the FSA bill on March 18, 2010, and the bill was then pending before the House of Representatives. (Endorsed Letter from Defense Counsel to the Court, July 8, 2010, ECF No. 184.) The Court granted defense counsel's request, and on August 3, 2010, the FSA was signed into law.

Dacosta's sentencing hearing took place on November 23, 2010. (See Final J., Nov. 23, 2010, ECF No. 199.) At the hearing, this Court concluded that the FSA did not apply to offenders, like Dacosta, whose conduct pre-dated the statute's enactment and sentenced Dacosta principally to a term of 120 months' imprisonment. (Id.) However, this determination was revisited following the Supreme Court's decision in Dorsey v. United States, 567 U.S. __, 132 S. Ct. 2321 (2012), which held that the FSA applied to those offenders whose crimes preceded the date when the FSA became effective, but whose sentencing hearings occurred after the date of enactment. See 132 S. Ct. at 2331 ("[W]e conclude that Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders."). Thus, on September 20, 2012, Dacosta was resentenced principally to a term of sixty-three months. (Am. Final J., Sept. 20, 2012, ECF No. 229.)

### C. The § 2255 Motion to Vacate, Set Aside, or Correct Sentence[3]

On September 24, 2012, Ingram submitted the instant § 2255 Motion, arguing that his attorney provided ineffective assistance of counsel by failing to request that the Court adjourn his

---

[3]In addition to the instant § 2255 Motion, on March 30, 2012, Ingram submitted motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) on grounds similar to those raised here. (See Mot. for Sentence Reduction, ECF No. 218.) The Court denied this motion in an order dated April 23, 2012. (Order Regarding Mot. for Sentence Reduction, April 24, 2012, ECF No. 220.)

3

sentencing hearing so that he could have "the benefit of" the FSA and by also failing to appeal his sentence so as to preserve his rights under the FSA. (§ 2255 Mot. at 4-5.) To further develop these claims, Ingram requests that this Court hold an evidentiary hearing pursuant to 28 U.S.C. § 2255(b). Alternatively, Ingram argues that his "sentence became illegal after the FSA and Dorsey, as it created a disparity between [his sentence] and [Dacosta's sentence] in violation of 18 U.S.C. § 3553." (Id. at 6.)

On October 11, 2012, the Government filed a memorandum in opposition to Ingram's § 2255 Motion. (Gov't Mem. in Opp'n to § 2255 Mot. ("Gov't Mem."), ECF No. 232.) Ingram filed a reply on November 9, 2012. (Reply to Gov't Mem. in Opp'n to § 2255 Mem. ("Reply Mem."), ECF No. 235.)

## II. DISCUSSION

### A. Statute of Limitations

As a preliminary matter, Ingram's § 2255 Motion, submitted on September 24, 2012 to vacate the judgment entered against him on April 7, 2009, fails because it is untimely. Section 28 U.S.C. § 2255(f) establishes a one-year period of limitation from the date on which a judgment of conviction becomes final. See § 2255(f)(1). Here, final judgment was entered against Ingram on April 7, 2009. (Final J. at 1.) Ingram's one-year window to file a timely motion under § 2255(f)(1) thus expired more than three-and-a-half years ago.

Although Ingram argues to the contrary, (see § 2255 Mot. at 12), his § 2255 Motion is also untimely under § 2255(f)(4), which establishes a one-year period of limitation from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." This subsection is inapplicable because no new facts have been discovered to support Ingram's claim since final judgment was entered on April 7, 2009.

4

Ingram's argument that the decision in Dorsey, should toll the applicable period of limitation under § 2255(f)(3) also fails. (See § 2255 Mot. at 2, 12.) Subsection § 2255(f)(3) extends a one-year period of limitation from the "date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2255(f)(3). But Dorsey did not make the FSA retroactively applicable to offenders, such as Ingram, whose crimes and whose sentencing preceded the date on which the FSA became effective. See Dorsey, 132 S. Ct. at 2335-36 (concluding that the FSA applied to post-Act sentencing of pre-Act offenders); see also United States v. Highsmith, 688 F.3d 74, 76-77 (2d Cir. 2012); United States v. Humphries, 2012 WL 5458028, at *1 (2d Cir. 2012). This fatal flaw notwithstanding, Ingram's § 2255 Motion also fails on the merits.

### B. Ineffective Assistance of Counsel Claims

#### 1. Legal Standard

To succeed on an ineffective assistance of counsel claim, a petitioner must "show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984); see also United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990). A petitioner must also "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In reviewing an ineffective assistance of counsel claim, a court must apply the "strong presumption" that counsel's representation was within a "wide range" of reasonable professional assistance. Id. at 689; see also Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) ("The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.") Although the Strickland test was formulated in the context of evaluating a

claim of ineffective assistance of trial counsel, the same test is also used with respect to appellate counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Where, as here, an evidentiary hearing is sought to develop an ineffective assistance of counsel claim under 28 U.S.C. § 2255(b), a movant "need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011) (internal quotation marks omitted); see also Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009). A court must grant such a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." § 2255(b).

### 2. Alleged Failure to Request Adjournment of Sentencing

Ingram alleges that his counsel provided ineffective assistance by failing to request an adjournment of his April 7, 2009 sentencing hearing so as to give him "the benefit of the [FSA], as counsel for . . . Dacosta did." (§ 2255 Mot. at 5, 16-17.) But, contrary to Ingram's assertions, (see § 2255 Mot. at 15), Dacosta's sentencing hearing was not initially adjourned because Dacosta's counsel predicted that Congress would enact the FSA. Rather, Dacosta's sentencing hearing was adjourned throughout much of 2009 so that counsel could hold a Fatico hearing concerning Dacosta's role in the offense. (See Gov't Mem. Ex. E.) Indeed it was only on July 8, 2010, more than one year after Ingram's sentencing hearing had occurred, that Dacosta's counsel first requested an adjournment in light of the FSA's potential enactment. Thus, as the Government argues, "Dacosta was able to benefit from the [FSA] largely because of the prolonged proceedings concerning his role in the offense . . . ." (Gov't Mem. at 9 n.3.)

By comparison, at the time of Ingram's sentencing hearing on April 7, 2009, Ingram's counsel had no cause to request a Fatico hearing and no other reason to request an adjournment. The fact that Ingram's counsel failed to request an adjournment in light of the FSA does not fall

6

below any objective performance standard because, at that time, the bill which would become the FSA had not even been introduced to Congress. See United States v. Canniff, 521 F. 2d 565, 573 n.7 (2d Cir. 1975) ("Counsel's failure to anticipate . . . an advance in the law, even though not wholly unanticipated, does not rise to a deprivation of . . . [a defendant's] constitutional right."); see also United States v. Harms, 371 F.3d 1208, 1212 (10th Cir. 2004) ("The Sixth Amendment does not require counsel for a criminal defendant to be clairvoyant."); Valenzuela v. United States, 261 F.3d 694, 700 (7th Cir. 2001) ("[O]ur cases provide that the Sixth Amendment does not require counsel to forecast changes or advances in the law."). For these reasons, Ingram's ineffective assistance claim for failure to request an adjournment in light of the FSA is denied.

### 3. Alleged Failure to Appeal Sentence

Ingram next argues that his counsel provided ineffective assistance by failing to appeal his sentence and by thereby failing to preserve Ingram's opportunity to take advantage of the FSA on appeal. (§ 2255 Mot. at 4.) This argument is meritless, however. Ingram knowingly and voluntarily waived his right to appeal, or to otherwise litigate after his conviction, any sentence of imprisonment that was 120 months or less.[4] See United States v. Harrison, 699 F.3d

---

[4]Specifically, Ingram entered the following plea colloquy at his hearing:

| | |
|---|---|
| Court: | Do you also understand that even after it's been determined what sentencing guideline applies to your case, the Judge has authority to impose a sentence that's more severe than the guideline sentence? |
| Ingram: | Yes, sir. |
| Court: | Do you also understand that in some circumstances, you or the government may have a right to appeal any sentence that I impose? |
| Ingram: | Yeah. |
| Court: | Do you also understand that under your plea agreement, you've given up your right to appeal or to otherwise litigate after your conviction any sentence that is 120 months of imprisonment? |

7

158, 159 (2d Cir. 2012) ("[T]he change in law caused by Dorsey's interpretation of the Fair Sentencing Act is not sufficient to upset a valid waiver of appeal."); see also Brady v. United States, 397 U.S. 742, 757 (1970) ("[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."). In addition, Ingram's counsel, unaware that the FSA bill would be enacted more than one year after Ingram's sentencing hearing, would have had no reason to appeal Ingram's sentence on this basis. See Kimmelman, 477 U.S. at 381 (evaluating counsel's performance from perspective of counsel at the time of the alleged error and in light of all the circumstances). Counsel's performance therefore cannot be deemed deficient under Strickland and Ingram's ineffective assistance claim for failure to appeal is denied. In addition, because Ingram is entitled to no relief on his ineffective assistance of counsel claims as a matter of law, an evidentiary hearing to develop his claims further is not necessary and Ingram's request for an evidentiary hearing is denied.

### C. Sentence Disparity Claims

Ingram's final argument is that "an unwarranted disparity" exists between the sentence that he received and the sentence that Dacosta received. (§ 2255 Mot. at 6.) Ingram contends that this disparity violates both 18 U.S.C. § 3553(6) and "the Equal Protection Guarantee" of the United States Constitution. (See § 2255 Mot. at 6.) Neither of these arguments is availing.

| Ingram: | Yes, sir. I mean, if you could just repeat. It's just that I didn't hear clearly what you said awhile ago. |
|---|---|
| Court: | Do you understand under your plea agreement, you've given up your right to litigate or to – excuse me, you've given up your right to appeal or otherwise litigate your sentence if it is 120 months of imprisonment? |
| Ingram: | Yes, sir. |

(Plea Hr'g Tr. at 7- 8.)

8

First, § 3553(a)(6) only requires courts to consider nationwide sentencing disparities, not the disparities between co-defendants. See United States v. Frias, 521 F.3d 229, 236 (2d Cir. 2008). A district court is therefore not compelled to consider the differences between co-defendants' sentences and any disparity, by itself, cannot serve as the basis for relief under 28 U.S.C. § 2255. See Frias, 521 F.3d at 236 n.8; see also United States v. Crisostomo, 2012 WL 5868319, at *2-3 (SDNY Nov. 20, 2012).

Moreover, in this case, the disparity between the sentences of Ingram and Dacosta is sanctioned by Congress and does not violate Ingram's constitutional rights. For, as the Supreme Court recognized in Dorsey, "the application of the [FSA's] new minimums to pre-Act offenders sentenced after August 3[, 2010] will create a new set of disparities. But those disparities, reflecting a line-drawing effort, will exist whenever Congress enacts a new law changing sentences (unless Congress intends re-opening sentencing proceedings concluded prior to a new law's effective date)." 132 S. Ct. at 2335 (emphasis added). Thus, absent congressional intent, the Constitution does not require that amendments, like the FSA, which alter penalties but create no new rights, be applied retroactively. See also 1 U.S.C. § 109 ("The repeal of any statute shall not have the effect to release or extinguish any penalty . . . incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty."). In sum, because Ingram was sentenced in April 2009, approximately six months before the FSA was introduced to Congress and nearly sixteen months before the statute was enacted, his § 2255 claims on the basis of the disparity between his and Dacosta's sentences are denied.

## III. CONCLUSION

For the reasons stated above, Ingram's § 2255 Motion is DENIED. Ingram's request for an evidentiary hearing is also DENIED.

IT IS SO ORDERED.

Dated: New York, New York
December 21, 2012

*[signature]*

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Order were sent to:

*Pro Se Plaintiff*:
Malik Ingram, No. 60869-054
FCI Fort Dix (Unit 5811 Westside)
P.O. Box 2000
Fort Dix, NJ 08640

*Appointed Counsel for Plaintiff*
John Burke
26 Court Street, Suite 2805
Brooklyn, NY 11242
(718) 875-3707
Fax: (718) 875-0053
Email: b33elmont@aol.com

*Counsel for Government*:
Brent Scott Wible
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
(212) 637-2307
Fax: (212) 637-2527
Email: brent.wible@usdoj.gov

Michael Max Rosensaft
United States Attorney, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212) 637-2366
Fax: (212) 637-2527
Email: michael.rosensaft@usdoj.gov